GERON LEGAL ADVISORS LLC
Yann Geron, Esq.
Jeannette Litos, Esq.
370 Lexington Avenue, Suite 1101
New York, New York 10017
(646) 560-3224

*Attorneys for Yann Geron, Chapter 7 Trustee/Plaintiff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                       :
                                                            :  Chapter 7
THE GAGE COMPANY,                                           :
                                                            :  Case No. 19-11787-DSJ
                                          Debtor.           :
------------------------------------------------------------x
YANN GERON, Chapter 7 Trustee of                            :
The Gage Company,                                           :
                                                            :
                                        Plaintiff,          :
                                                            :
-against-                                                   :  Adv. Pro. No. 21-_____
                                                            :
ROBERT A. CHUTE, SUZANNE CHUTE, and                         :
PATRICK T. CHUTE                                            :
                                                            :
                                       Defendants.          :
------------------------------------------------------------x

# COMPLAINT

Yann Geron (the "Trustee" or "Plaintiff"), Chapter 7 trustee of the estate of The Gage Company, the above-captioned debtor (the "Debtor" or "Gage"), by and through his counsel, Geron Legal Advisors LLC, as and for his complaint against Robert A. Chute ("Mr. Chute"), Suzanne Chute ("Mrs. Chute"), and Patrick T. Chute ("Patrick Chute") (collectively Mr. Chute, Mrs. Chute and Patrick Chute are referred to as, the "Defendants"), respectfully sets forth and represents:

**INTRODUCTION**

1. On May 31, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

2. On June 14, 2019, Yann Geron was appointed interim chapter 7 trustee of the Debtor's estate. He has since qualified as the permanent trustee of the Debtor's estate and is currently serving in that capacity.

3. The Trustee brings this adversary proceeding to seek relief against the Debtor's principal, his wife, and his son, who are insiders of the Debtor, as follows: (i) directing Mr. Chute and Patrick Chute to turn over to the Debtor's estate the loan balances due on loans extended from the Debtor to Mr. Chute and his son, (ii) setting aside and avoiding certain fraudulent transfers made by the Debtor to or for the benefit of the Defendants, and directing the Defendants to turn over the full amount of such transfers to the Debtor's estate, and (iii) finding that Mr. Chute and Patrick Chute were unjustly enriched by failing to repay the balance of the loans to the Debtor and retaining additional compensation payments to themselves despite collecting sizeable salary after the Debtor ceased operating.

**JURISDICTION AND BASIS FOR CLAIMS**

4. This adversary proceeding is brought under 11 U.S.C. §§ 502, 541, 542, 544, 548, 550, and 551 of the Bankruptcy Code, Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), New York Debtor and Creditor Law ("NY DCL") §§ 273, 274, 275, 276, and 276-a, Maine Uniform Fraudulent Transfer Act ("ME UFTA") §§ 3575, 3576 and 3580, New York common law and any common law, rule, regulation and/or any applicable law of any other jurisdiction in which assets that are property of the estate currently unknown to Plaintiff are located.

5. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A),(b)(2)(E), (b)(2)(F), (b)(2)(H), (b)(2)(N), and (b)(2)(O). Venue is proper in this court under 28 U.S.C. § 1409(a).

6. This Court has jurisdiction to enter a final judgment against Defendants in this proceeding. The Trustee consents to this Court's jurisdiction to enter final judgment against Defendants herein.

**PARTIES**

7. The Trustee is a member of the panel of private trustees established by the United States Trustee pursuant to 28 U.S.C. § 586. The Trustee maintains offices at 370 Lexington Avenue, Suite 1101, New York, New York 10017.

8. The Trustee is statutorily charged under the Bankruptcy Code with liquidating the Debtor's assets for the benefit of its creditors, and to avoid and recover certain transfers made by the Debtor prior to the Trustee's appointment.

9. Prior to the Petition Date, the Debtor's headquarters and principal place of business were located at 172-174 Saint John Street, Portland, Maine 04102-3021.

10. Defendant Robert Chute is a resident of New York with a last-known address of 768 Fifth Avenue, #1309, New York, New York 10019. During the relevant period, Mr. Chute was employed by Gage, was Gage's sole owner, served as an officer of Gage, and was an insider of the Debtor pursuant to Section 101(31) of the Bankruptcy Code.

11. Defendant Suzanne Chute is a resident of New York with a last-known address of 768 Fifth Avenue, #1309, New York, New York 10019. During the relevant period, Mrs. Chute was the spouse of Mr. Chute, and was an insider of the Debtor pursuant to Section 101(31) of the Bankruptcy Code.

12. Defendant Patrick Chute is a resident of Maine with a last-known address of 403 Blackstrap Road, Falmouth, Maine 04105. During the relevant period, Patrick Chute was the son of Mr. Chute, served as an officer of Gage, and was an insider of the Debtor pursuant to Section 101(31) of the Bankruptcy Code.

## BACKGROUND

13. Mr. Chute has been the sole and controlling shareholder of the Debtor since the Debtor's incorporation in or about 1979.

14. In its early years of operation, the Debtor specialized in repairing and maintaining large-scale mechanical operations in, for example, automotive plants.

A. *The Pension Fund Claim*

15. In or about December 31, 2009, the Debtor sold certain of its operating assets in Pennsylvania to Tri-State Industrial Solutions, Inc (the "Tri-State Sale").

16. At the time of the Tri-State sale, the Debtor was a party to a collective bargaining agreement with Teamsters Local Union 110 (the "Collective Bargaining Agreement") pursuant to which the Debtor was obligated to make payment contributions to The Western Pennsylvania Teamsters and Employers Pension Fund (the "Pension Fund") on behalf of its eligible employees.

17. As a result of the Tri-State Sale, the Pension Fund determined that the Debtor ceased its covered operations thereby causing the Debtor's withdrawal from the Pension Fund and triggering withdrawal liability under the Collective Bargaining Agreement.

18. In or about October 2010, the Pension Fund assessed the Debtor with withdrawal liability and sought payment from the Debtor in the amount of $612,505.00 (the "Pension Fund Claim").

19. After receiving demand from the Pension Fund, the Debtor made monthly payments to the Pension Fund through January 2018. In May 2018, the Debtor remitted a single payment in May 2018 for the months of February, March, April, and May 2018.

20. The Debtor has not made any payments to the Pension Fund after May 2018.

21. On March 17, 2019, the Pension Fund commenced a lawsuit against the Debtor in the U.S. District Court for the Western District of Pennsylvania (*Baily, et al. v. The Gage Company*, Civil Action No. 2:19-cv-250 LPL) (the "Pension Fund Action"), to recover the balance due on the Pension Fund Claim, stated to be $729,504.00, which amount includes liquidated damages (the "Pension Fund Balance Due"). Approximately two months later, the Debtor filed the instant bankruptcy proceeding which stayed the Pension Fund Action.

B. *Sale of the Debtor's Remaining Business*

22. Upon information and belief, in the early 2000's, the Debtor turned its focus to its division, Redlon & Johnson Supply ("R&J Division"), which operated as a distributor of plumbing, heating, cooling, water system, pipe, valve, fittings, and industrial products. In 2015, the Debtor sold its R&J Division to Ferguson Enterprises, Inc. ("Ferguson"). At the time of this sale, the Debtor's operations through R&J had expanded to ten locations throughout Maine and New Hampshire and comprised all of the Debtor's business.

23. Pursuant to an Asset Purchase Agreement dated March 16, 2015 (the "Ferguson APA"), Ferguson acquired the majority of the Debtor's assets, comprised primarily of the R&J Division, for total consideration of approximately $15,509,048.00, representing $12,811.897.75 in cash for inventory, accounts receivable, fixed assets and prepared items as of 3/31/2016, plus an assumption of aggregated liabilities of $5,302,849.75 as of 3/31/2016.

24. The cash consideration under the Ferguson APA was paid to the Debtor as follows:

5

    a. Payment into the Debtor's Wells Fargo bank account in the amount of $7,142,782.50;

    b. Pay-off of a note due from the Debtor to Wells Fargo, in the amount of $6,815,293.79; and

    c. On or about March 31, 2016, the net retained amount, totaling $1,583,350.89, was distributed to the Debtor following post-closing adjustments.

25. The Debtor ceased all business operations in March 2015 shortly after the sale to Ferguson.

26. The Debtor maintained no office or employees as of approximately 2016, had no revenue in 2017 or 2018, and filed final tax returns for tax year 2018.

C. *Transfers from the Debtor to the Defendants Following the Ferguson Sale*

27. In response to interrogatories propounded by the Pension Fund, Mr. Chute stated that the Debtor had "no business operations after March 2015" and maintained a small office solely to "collect outstanding receivables, help Ferguson in the transition and liquidate numerous obligations precipitated by the Ferguson sale."

28. The Debtor's books and records indicate that the Debtor made substantial payments to or for the benefit of the Defendants after the sale to Ferguson and cessation of the Debtor's operations, as follows (collectively, the "Transfers"):

    a. $3,437,103.22 to Mr. and Mrs. Chute directly (the "Chute Transfers"). A schedule of the Chute Transfers is annexed hereto as Exhibit A.

    b. $1,174,608.56 to PHH Mortgage Corporation ("PHH") for the benefit of Mr. and Mrs. Chute on account of their home mortgage (the "PHH Transfers"). A schedule of the PHH Transfers is annexed hereto as Exhibit B.

    c. $269,176.44 to Wells Fargo Bank, N.A. ("Wells Fargo") for the benefit of Mr. and Mrs. Chute on account of their home mortgage (the "Wells Fargo Transfers"). A schedule of the Wells Fargo Transfers is annexed hereto as Exhibit C.

    d. $50,000.00 to Sentient Jet LLC ("Sentient Jet") for the benefit of one or more of the Defendants (the "Sentient Jet Transfers") on account of private aviation services. A schedule of the Sentient Jet Transfers is annexed hereto as Exhibit D.

    e. $509,957.55 to Patrick Chute directly (the "Patrick Transfers"). A schedule of the Patrick Transfers is annexed hereto as Exhibit E.

29. As sole shareholder and owner of the Debtor, Mr. Chute controlled all the operations of the Debtor and controlled and directed each of the Transfers.

*D. The Chute Loans*

30. The Debtor's books indicate that as of on or about March 2015, Mr. Chute had taken a loan or loans from the Debtor totaling no less than $4,000,000 (the "Chute Loan 1"). The repayment terms of the Chute Loan 1 were not specified in the Debtor's books and records nor did the Debtor's books and records reflect any repayment of the Chute Loan 1.

31. The Debtor's records reflect that, while the Debtor was indebted to the Pension Fund and following the closing of the sale to Ferguson in 2016, Mr. Chute caused the Debtor to reclassify the Chute Loan 1 in the Debtor's books as a purported travel, administrative and office expense of the Debtor.

32. The Debtor's books also indicate that during the year 2017, Mr. Chute had taken an additional loan or loans from the Debtor totaling $1,468,721.00 (the "Chute Loan 2"). The Debtor's books and records reflect the Chute Loan 2 remained due and owing from Mr. Chute to the Debtor as of December 31, 2017. The repayment terms of the Chute Loan 2 were not specified in the Debtor's books and records nor did the Debtor's books and records reflect any repayment of the Chute Loan 2.

33. Rather, the Debtor's books reflect that while the Debtor was indebted to the Pension Fund, during the year 2018, Mr. Chute caused the Debtor to reclassify the Chute Loan 2 as a "liquidation distribution" to himself on the Debtor's 2018 tax returns.

34. The Debtor's books also reflect that during or prior to the year 2017, Patrick Chute had taken a loan or loans from the Debtor totaling $250,000.00 (the "Patrick Loan"). The Debtor's books and records reflect the Patrick Loan remained due and owing from Patrick Chute to the Debtor as of December 31, 2017. The repayment terms of the Patrick Loan were not specified in the Debtor's books and records nor did the Debtor's books and records reflect any repayment of the Patrick Loan.

35. Instead, the Debtor's books and records reflect that while the Debtor was indebted to the Pension Fund, during the year 2018, the Patrick Loan was set-off against "loan payable" despite there being no record of any amount due by the Debtor to Patrick Chute.

E. *Mr. Chute Continued to Draw Salary from the Debtor*

36. Throughout the period in which Mr. Chute received the Chute Transfers, the PHH Transfers, the Wells Fargo Transfers, the Sentient Jet Transfers, and the Chute Loans 1 and 2, Mr. Chute also continued to draw his salary from the Debtor.

37. Specifically, in addition to receiving the benefit of each of the Chute Transfers, the PHH Transfers, the Wells Fargo Transfers, the Sentient Jet Transfers, the Debtor's tax returns reflect that Mr. Chute received an annual salary of $1,056,000 for each of tax years 2015 and 2016, and that he continued to receive salary payments in the form of miscellaneous income in 2017 in the amount of $148,960.

F. *Patrick Chute Continued to Draw Salary from the Debtor*

38. Throughout the period in which Patrick Chute received the Patrick Transfers, he also continued to draw salary from the Debtor.

39. Specifically, in addition to receiving the benefit of each of Patrick Transfers, the Debtor's tax returns reflect that Patrick Chute received an annual salary of approximately $250,000 for each

8

of tax years 2015 and 2016, and that he continued to receive salary payments in the form of miscellaneous income in 2017 in the amount of $150,200.

G. *Debtor's Insolvency*

40. In addition to the Pension Fund Claim, upon information and belief, the Internal Revenue Service (the "IRS") was owed $971,882.00 as of the Petition Date for taxes due and owing for the year 2015 (the "IRS Claim").

41. Together with the Transfers, the reclassification of the Chute Loan 2 as a "liquidation distribution" and the set-off of the Patrick Loan against an unsupported "loan payable" rendered the Debtor insolvent as of January 1, 2018.

42. On or after January 1, 2018, the Debtor transferred approximately $680,683.40 to or for the benefit of the Defendants. Together with the reclassification of the Chute Loan 2 as a "liquidation distribution" and the set-off of the Patrick Loan against an a "loan payable" the Defendants received $2,399,321.40 to or for their direct benefit.

43. Alternatively, the Debtor was rendered insolvent as of January 29, 2018, as evidenced by the date of the Transfers reflected in the Debtor's books and records which were reclassified as "liquidation distribution" and "loan payable".

44. On or after January 29, 2018, the Debtor transferred approximately $494,173.22 to or for the benefit of the Defendants. Together with the reclassification of the Chute Loan 2 as "liquidation distribution" and the set-off of the Patrick Loan against a "loan payable" the Defendants received $1,962,721.00 to or for their direct benefit.

**CAUSES OF ACTION**

COUNT ONE
(Turnover of Property of the Estate – 11 U.S.C. §§ 541 and 542)
As Against Defendants Robert Chute and Patrick Chute

45. The Trustee repeats and realleges each of the allegations contained in the preceding paragraphs as if the same were fully set forth herein at length.

46. Section 541(a) of the Bankruptcy Code provides, in relevant part, that the Debtor's estate is comprised of "(1) […] all legal or equitable interests of the debtor in property as of the commencement of the case […] (6) proceeds, product offspring, rents, or profits of or from property of the estate."

47. Section 542(b) of the Bankruptcy Code provides, in relevant part, that and entity that "owes a debt that is property of the estate, and this is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under Section 552 of this title against a claim against the debtor."

48. The Chute Loans 1 and 2 were each improperly reclassified by Mr. Chute, acting by and for the Debtor, from assets of the Debtor to non-recoverable book entries.

49. The Patrick Loan was also improperly set-off by the Debtor from assets of the Debtor to non-recoverable book entries.

50. The Chute Loans 1 and 2, and the Patrick Loan should have remained on the Debtor's books and records as assets of the Debtor at their origination and through the Petition Date.

51. Each of the Chute Loans 1 and 2, and the Patrick Loan remain due and owing from Mr. Chute and Patrick Chute to the Debtor.

52. The Chute Loans 1 and 2, and the Patrick Loan have not been repaid.

53. Each of the Chute Loan 1, the Chute Loan 2, and the Patrick Loan constitute property of the Debtor's estate pursuant to Section 541 of the Bankruptcy Code.

54. Pursuant to Section 542 of the Bankruptcy Code, the Trustee is entitled to collect the Chute Loans 1 and 2 from Mr. Chute in an amount not less than $5,468,721.00, and the Patrick Loan

10

from Patrick Chute in an amount not less than $250,000.00, including any accrued contractual, or statutorily imputed, interest due thereon.

COUNT TWO
(Avoidance and Recovery of Intentional Fraudulent Conveyances –
11 U.S.C. §§ 548(a)(1)(A), 550 and 551)
As Against the Defendants

55. The Trustee repeats and realleges each of the allegations contained in the preceding paragraphs as if the same were fully set forth herein at length.

56. Sections 548(a)(1)(A) and 550(a)(1) of the Bankruptcy Code empower a trustee, for the benefit of the estate, to "avoid and recover any transfer […] of an interest of the debtor in property, or any obligation […] incurred by the debtor, that was made or incurred on or within the 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily" made the transfers with the actual intent to hinder, delay or defraud the debtor's creditors.

57. In the two years prior to the Petition Date, Mr. Chute caused the Debtor to transfer a total of $1,781,654.66 (collectively, the "548 Transfers") from the Debtor to or for the benefit of the Defendants, as follows:

 a. $1,241,173.22 from the Debtor directly to Mr. and Mrs. Chute;

 b. $380,081.44 from the Debtor to PHH for the benefit of Mr. and Mrs. Chute; and

 c. $160,400.00 from the Debtor directly to Patrick Chute.

58. Courts have held that the requisite "actual intent" of Section 548(a)(1)(A) can be proved by circumstantial evidence, sometimes referred to as "badges of fraud".

59. In this case, several badges of fraud support the finding of actual intent to hinder, delay or defraud the debtor's creditors:

 a. The 548 Transfers were made to Mr. Chute, Mrs. Chute, and Patrick Chute, who were each statutory insiders of the Debtor at the time of these transfers.

11

  b. Before the 548 Transfers were made, the Debtor had been sued or threatened with suit by the Pension Fund.

  c. The 548 Transfers were made after the Pension Fund Claim arose and with the knowledge of the Pension Fund Claim.

  d. The 548 Transfers were made following the Debtor's cessation of its operations and from the funds collected from the Ferguson sale. Thus, the proceeds comprising the 548 Transfers constituted substantially all of the Debtor's remaining assets.

  e. The Debtor was insolvent or became insolvent as a result of or shortly after the 548 Transfers were made.

  f. Mr. Chute knowingly caused the 548 Transfers to be diverted from the Debtor to the Defendants in lieu of paying the Debtor's then-existing creditors.

60. The foregoing demonstrates that the 548 Transfers were made with the actual intent for defraud the Debtor's creditors.

61. Therefore, the 548 Transfers must be avoided and set aside as fraudulent pursuant to Section 548 of the Bankruptcy Code, and the Trustee must be granted judgment against Mr. Chute, Mrs. Chute, and Patrick Chute pursuant to Section 550 of the Bankruptcy Code in an amount not less than $1,781,654.66, plus any applicable interest thereon.

COUNT THREE
(Avoidance and Recovery of Intentional Fraudulent Conveyances –
11 U.S.C. §§ 544(b), 550, 551 and Maine Uniform Fraudulent Transfer Act Title 14, Chapter 504 §§ 3575(1)(A) and 2(A-K) and 3580)
As Against the Defendants

62. The Trustee repeats and realleges each the allegations contained in the preceding paragraphs as if the same were fully set forth herein at length.

63. Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has independent standing to assert claims of a creditor in existence at the time the contested transfers were made and avoid any transfer of an interest of the debtor that is voidable under applicable law by a creditor holding

12

an unsecured claim that is allowable under Section 502 of the Bankruptcy Code or that is not allowable under Section 502(e) of the Bankruptcy Code.

64. The Pension Fund Claim arose in or around October 2010 and remained unpaid (less certain monthly payments from the Debtor) through the Petition Date.

65. The IRS Claim arose in 2015 and remained unpaid through the Petition Date.

66. Therefore, when the Transfers were made, there was at least one creditor who has held and still holds a matured unsecured claim against the Debtor that is allowable under Section 502 of the Bankruptcy Code.

67. At the time the Debtor made each of the Transfers, the Pension Fund and/or the IRS had standing under Maine law to assert fraudulent conveyance claims against the Debtor.

68. Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has standing to assert the claims which the Pension Fund and/or the IRS had against the Debtor.

69. Between June 1, 2015 and May 31, 2019, Mr. Chute caused the Debtor to transfer a total of $5,440,845.77 (collectively, the "544 Transfers") from the Debtor to or for the benefit of the Defendants as follows:

   a. $3,437,103.22 from the Debtor directly to Mr. And Mrs. Chute;

   b. $1,174,608.56 from the Debtor to PHH for the benefit of the Defendants;

   c. $269,176.44 from the Debtor to Wells Fargo for the benefit of the Defendants;

   d. $50,000.00 from the Debtor to Sentient Jet for the benefit of one or more of the Defendants; and

   e. $509,957.55 from the Debtor directly to Patrick Chute.

70. Pursuant to ME UFTA §§ 3575(1)(A) and 3580, a transfer is recoverable within six years after the transfer was made if the transfer made […] by a debtor is fraudulent as to a creditor […]

13

if the debtor made the transfer or incurred the obligation "with actual intent to hinder, delay or defraud any creditor of the debtor." ME UFTA § 3575(2)(A-K), further provides that courts may consider several factors to determine the presence of actual intent including whether "(A) the transfer or obligation was to an insider;" "(E) the transfer was of substantially all the debtors assets;" "(I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;" and "(J) the transfer occurred shortly before or shortly after a substantial debt was incurred."

71. The 544 Transfers were made to or for the benefit of Mr. Chute, Mrs. Chute, and/or Patrick Chute.

72. Mr. Chute, Mrs. Chute, and Patrick Chute were insiders of the Debtor when they received the 544 Transfers.

73. The 544 Transfers constituted substantially all of the Debtor's assets.

74. The Debtor was insolvent or became insolvent shortly after the 544 Transfers.

75. Based on the foregoing, pursuant to §§ 3575(1)(A) and 2(A-K), and 3580 of the ME UFTA, and §§ 544(b), 550, and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the 544 Transfers; (b) directing that the 544 Transfers be set aside; and (c) obtaining judgment against Mr. Chute, Mrs. Chute, and Patrick Chute in, in an amount of no less than $5,440,845.77, plus any applicable interest thereon.

COUNT FOUR
(Avoidance and Recovery of Constructive Fraudulent Conveyances –
11 U.S.C. §§ 548(a)(1)(B), 550 and 551)
As Against the Defendants

76. The Trustee repeats and realleges each of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

77. Pursuant to Section 548(a)(1)(B) of the Bankruptcy Code, the Trustee may avoid and recover any transfer of an interest of the Debtor in property that was made on or within the 2 years before the date of the Petition Date, if the Debtor voluntarily or involuntarily (i) made the transfers for less than reasonably equivalent value, and (ii) was insolvent or became insolvent as a result of the transfer; or intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

78. Between June 1, 2017 and May 31, 2019, the Debtor made the 548 Transfers to or for the benefit of the Defendants and received no consideration in return for such transfers.

79. As detailed in paragraphs 41 and 42 above, the Debtor became insolvent as of January 1, 2018. A portion of the 548 Transfers in the amount of $680,683.40 was made, the Chute Loan 2 in the amount of $1,468,721.00 was reclassified, and the Patrick Loan in the amount of $250,000.00 was set-off, on or after January 1, 2018.

80. Alternatively, as detailed in paragraphs 43 and 44 above, the Debtor was rendered insolvent as of January 29, 2018. A portion of the 548 Transfers in the amount of $494,173.22 was made, the Chute Loan 2 in the amount of $1,468,721.00 was reclassified, and the Patrick Loan in the amount of $250,000.00 was set-off, on or after January 29, 2018.

81. Based on the foregoing, a portion of the 548 Transfers, the Chute Loan 2, and the Patrick Loan must be avoided and set aside as constructive fraudulent conveyances, and the Trustee must be granted judgment against the Defendants for any portion of the 548 Transfers, the Chute Loan 2, and the Patrick Loan that was made following the Debtor's insolvency, plus any applicable interest thereon.

COUNT FIVE
(Avoidance and Recovery of Constructive Fraudulent Conveyances –
11 U.S.C. §§ 544(b), 550, 551 and Maine Uniform Fraudulent Transfer Act Title 14, Chapter
504 §§ 3575(1)(B), 3576(1) and (2), and 3580)

As Against the Defendants

82. The Trustee repeats and realleges each of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

83. Pursuant ME UFTA §§ 3575(1)(B), 3576(1) and (2), and 3580, a transfer is recoverable within six years after the transfer was made if the transfer made […] by a debtor is fraudulent as to a creditor […] if the debtor did not receive reasonably equivalent value in exchange for the transfer and the debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

84. When the 544 Transfers were made, Mr. Chute and Patrick Chute were collecting sizeable salaries, despite the fact that they did not render any services or provide any benefit or value to the Debtor on account of the 544 Transfers.

85. When the 544 Transfers were made, Mrs. Chute was not an employee, nor did she render services or provide any benefit or value to the Debtor on account of the 544 Transfers.

86. Therefore, the Debtor did not receive reasonably equivalent value for the 544 Transfers.

87. Throughout the period when the 544 Transfers were made, the Debtor dissipated its remaining funds which rendered it unable to pay the Pension Fund Claim and the IRS Claim.

88. When making the 544 Transfers, the Debtor knew, or should have known, that the Debtor had incurred debts beyond the Debtor's ability to pay as they became due.

89. When the 544 Transfers were made, the Debtor had incurred the obligations to the Pension Fund and the IRS and, as a result of the 544 Transfers, the Debtor was unable to repay the Pension Fund Claim and the IRS Claim.

90. Therefore, pursuant to ME UFTA §§ 3575(1)(B), 3576(1) and (2), and 3580, and Sections 544(b), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding

16

and preserving the 544 Transfers; (b) directing that the 544 Transfers be set aside; and (c) obtaining judgment against the Defendants in an amount of no less than $5,440,845.77, plus any applicable interest thereon.

COUNT SIX

(Unjust Enrichment – 11 U.S.C. §§ 544(b), 550, 551, NY and ME Common Law)
As Against Defendants Robert Chute and Patrick Chute

91. The Trustee repeats and realleges each of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

92. Under New York common law, a party is unjustly enriched when that party was enriched, at the other party's expense, and that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.

93. Similarly, under Maine common law, a defendant is unjustly enriched when the defendant receives a benefit from the plaintiff, has knowledge or awareness of the benefit, and accepts or retains the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

94. The Defendants received the financial benefits of the Transfers.

95. Mr. Chute controlled the Debtor and caused each of the Transfers to be made to the Defendants.

96. The Transfers were made when the Debtor was insolvent. Alternatively, the Debtor was rendered insolvent by the Transfers.

97. As a result of the Transfers, the Debtor was unable to pay the Pension Fund Claim, the IRS Claim, and all other claims of the Debtor's estate.

98. The Defendants accepted the value of the Transfers and have kept the value of the Transfers.

99. It would be inequitable to allow the Defendants to retain the benefit of the Transfers while failing to pay all the Debtor's estate's claims.

100. Therefore, the Trustee is entitled to a judgment: (a) finding that the Defendants were unjustly enriched by the Transfers, and (ii) granting the Trustee judgment against the Defendants in the amount of the sum of all claims against the Debtor's estate, plus any applicable interest thereon.

## RESERVATION OF RIGHTS

101. The Trustee's investigation into the Debtor's financial affairs is ongoing. The Trustee may discover additional transfers and/or claims against the Defendants under the various provisions of the Bankruptcy Code. Accordingly, the Trustee hereby expressly reserves the right to amend and/or supplement either the factual bases and/or the relief requested in this complaint.

**WHEREFORE**, the Trustee demands judgment against Defendants as follows:

a. Directing Mr. Chute and Patrick Chute to turn over to the Trustee the balance of the Chute Loans 1 and 2 and the Patrick Loan, or the value thereof, totaling not less than $5,718,721.00 pursuant to 11 U.S.C. § 542, plus any applicable interest;

b. Avoiding the Section 548 Transfers and directing the Defendants to pay the Trustee the equivalent value of the Section 548 Transfers received, totaling not less than $1,781,654.66, plus applicable interest;

c. Avoiding the 544 Transfers and directing the Defendants to pay the equivalent value of the 544 Transfers received, totaling not less than $5,440,845.77, plus applicable interest;

d. Finding that the Defendants were unjustly enriched by the Transfers and requiring them to pay to the estate an amount equal to the sum of all claims against the Debtor's bankruptcy estate, plus applicable interest;

18

  e. Awarding all attorneys' fees expended by Plaintiff in connection with this action, plus related costs; and

  f. Granting such other and further relief as this Court deems just.

Dated: New York, New York  
    June 1, 2021

GERON LEGAL ADVISORS LLC  
*Attorneys for the Trustee/Plaintiff*

By: *s/ Yann Geron*  
   Yann Geron  
   Jeannette Litos  
   370 Lexington Avenue, Suite 1101  
   New York, New York 10017  
   (646) 560-3224